IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| SAVI TECHNOLOGY, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Civil Action No. _____ |
| DKP MFG, INC. f/k/a DAE KYUNG | ) | |
| PHILIPPINES COMPANY | ) | |
| INCORPORATED, | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT

Plaintiff Savi Technology, Inc. ("Savi"), as its Complaint against defendant DKP MFG,

Inc., f/k/a Dae Kyung Philippines Company Incorporated ("DKP"), states the following:

### The Parties

1.      Savi is a Delaware corporation with its principal place of business at 3601

Eisenhower Avenue, Suite 280, Alexandria, Virginia 22304.

2.      DKP is a Republic of the Philippines corporation, with its principal place of

business at Lot 1-6, Block 20, Phase IV, Maine Avenue, PEZA, Rosario, Cavite 4106, Republic

of the Philippines.

### Jurisdiction and Venue

3.      This Court has personal jurisdiction over DKP because, among other things, the

causes of action herein arise from DKP transacting business in Virginia, contracting to supply

services or things in Virginia, causing tortious injury in Virginia, and its contacts with and in

Virginia.  Among other things, and pursuant to and in furtherance of the parties' relationship and

the facts at issue, DKP:  (a) contracted with Savi, a company located in Virginia; (b) directed its

executives (repeatedly) to travel to Savi's offices in Virginia; (c) held regular telephone meetings with Savi personnel in Virginia; (d) corresponded with Savi personnel in Virginia; (e) shipped Savi products to Virginia; and (f) caused injury to Savi in Virginia.

4.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a) because diversity of citizenship exists between the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs.

5.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because a substantial part of the events and omissions giving rise to the Complaint occurred in this judicial district, and DKP is subject to personal jurisdiction in this venue with respect to this action.

## FACTS

### A.     The Parties Enter Into an Agreement for DKP to Assemble and Deliver Products for Savi.

6.     Savi delivers live streaming facts and insights about the location, condition, and security of in-transit goods.  Using big data[1] and analytics, Savi equips shippers, carriers, 3PLs, and governments with actionable insights to optimize supply chains before, during, and after transit, reducing costs and inventory while improving service.  Savi is trusted to support some of the world's largest and most complex supply chain networks for large companies, the U.S. Department of Defense, and over a dozen government agencies around the globe.  Among other things, Savi provides its customers with devices that track and report the location of each device, which customers use to track the location of their goods and materials ("Products").

7.     DKP is a contract manufacturer (*i.e.*, a vendor) of electrical component parts, materials, and goods that it supplies to other companies, including Savi.

---

[1]     "Big data" is very large data sets that can be analyzed computationally to reveal things like patterns, trends, and associations.

8.      In 2008, Savi and DKP entered into a Master Supply Agreement ("MSA"), pursuant to which DKP agreed to, among other things, assemble Products and ship and supply them to Savi and/or its customers in accordance with the type of Product, delivery date, destination, and quantity that Savi ordered from DKP.

9.      To assist DKP in performing its obligations under the MSA, Savi provided DKP with certain test equipment, tools and dies, documentation, software, and related materials and assets ("Equipment") to be used by DKP in the assembly and testing of Products.  The Equipment includes software that contains Savi's confidential and proprietary intellectual property, including confidential and proprietary specifications and other non-public information about the Products ("Confidential Information").  The parties agreed the Equipment and Confidential Information is the property of Savi.

10.     Section 22.2 of the MSA provides:

> Savi reserves the right for itself and its customer, to enter [DKP's] premises or other facilities where the Products are being manufactured, stored or handled, including sub-tier supplier locations, upon reasonable notice and during normal working hours, to audit and inspect the quality of the design, manufacturing, testing, handling or storage of the Products and that [DKP] is complying with the terms and conditions herein.

11.     Section 25.5 of the MSA provides:

> Upon termination or expiration of the Agreement, [DKP] shall return all equipment, documentation, Confidential Information and software provided to [DPK] by Savi.

**B.      DKP Delivers Large Quantities of Defective Products, Fails to Remedy the Defects, and Fails to Honor its Warranty Obligations.**

12.     The MSA contains multiple provisions in which DKP agreed to certain critical quality control and warranty standards.  Among other things:

> a.      Section 17.1 of the MSA provides:

The Products shall comply with all provisions of the Specifications and [DKP] will follow all the requirements set forth therein.

b.      Section 17.3 of the MSA provides:

If Savi returns non-conforming Product to [DKP], [DKP] agrees to promptly implement appropriate actions necessary to minimize the possibility that additional defective Products will be delivered to Savi, and further agrees to promptly implement appropriate corrective actions as necessary to prevent reoccurrence of the defect.  [DKP] further agrees to conduct a detailed failure analysis and to report the failure analysis data to Savi . . . .

c.      Section 18.1 of the MSA provides:

[DKP] warrants that . . . . (iii) the services to be provided in connection with the manufacture and sale of Products shall be performed consistent with prevailing industry standards by competent and qualified personnel; (iv) at the time of delivery to Savi and for a period of thirty six (36) months from the date of Savi's acceptance, each Product, and all of its components, will be new, merchantable, free from defects in design, materials and workmanship and will conform in all respects to the Specification.

d.      Section 18.2 of the MSA provides:

In the event a Product fails to comply with any warranty set forth in Section 18.1 above, [DKP] shall:  (a) make every reasonable effort to immediately correct the non-compliance; and (b) at Savi's option, either (i) within fourteen (14) days of notice of non-compliance from Savi, repair or replace defective Product or (ii) within twenty one (21) days of notice of non-compliance from Savi, credit Savi for the amount paid and all costs incidentally related thereto.

e.      Section 18.3 of the MSA provides that, upon certain failures ("Epidemic

Failure Event"):

(i) having the same or similar cause, verified by [DKP], by Savi, or an independent third party on behalf of Savi; (ii) occurring within two (2) years after the date of delivery of the Product; (iii) resulting from defects in workmanship, manufacturing process or failure to conform with the Specifications; and (iv) having a one month failure rate equal to or in excess of the rate calculation defined as two times (2x) the most current, consecutive five month (or any other mutually agreed upon, currently monitored duration) rolling average failure rate

4.

. . . . Savi shall promptly notify [DKP], and shall provide, if known and as may then exist, a description of the failure, and the suspected lot numbers, serial numbers or other identifiers, and delivery dates, or the failed Products . . . .  [and DKP] shall promptly provide its preliminary findings regarding the cause of the failure [and] . . . . its root cause corrective analysis, its proposed plan for the identification of and the repair and/or replacement of the affected Products, and such other appropriate information.  [DKP] shall recommend a corrective action program which identifies the affected units for repair, and which minimizes disruption to the end user . . . . [and DKP] shall:  (a) as agreed by both parties:  (i) repair the affected Products; or (ii) provide a credit or payment to Savi in an amount equal to the cost to Savi for qualified, replacement Products acceptable to Savi; (b) reimburse Savi for reasonable freight, transportation, customs, duties, insurance, storage, handling and other incidental shipping costs.

13. DKP failed to comply with and materially breached its contractual obligations. For example, DKP was late shipping Products, and began assembling and delivering at least tens of thousands of defective Products to Savi and/or its customers.  For several types of such defective Products, the failure rates neared or exceeded 50%, worth over $1.5 million.

14. DKP also consistently:  (a) failed to replace defective Products, and/or credit Savi for such defective Products; (b) failed to replace defective Products within the required deadlines; and (c) used Products and components intended to fulfill Savi's new purchase orders to instead replace defective Products.  For example, DKP replaced less than 10% of the defective Products it supplied to one of Savi's key customers within the required fourteen-day period. More often, it took DKP months to replace defective Products.  On multiple occasions, DKP refused to comply with its warranty obligations.

15. The foregoing failures and delays continued over time.  With respect to one of Savi's large commercial customers, for example, DKP was notified of hundreds of defective Products in 2017, thousands more in 2018, and thousands of additional defective Products in 2019.  This required Savi to expend considerable resources addressing DKP's failure to comply with its contractual obligations.

16.     For example, Savi had to:  (a) send personnel around the world to address its customers' problems with defective Products that DKP supplied, but failed to timely replace; (b) commit time, money and personnel to get DKP to try to correct the problems DKP was having assembling non-defective Products, despite the fact that DKP was obligated to fix them; and (c) spend time and resources identifying huge volumes of defective Products that DKP supplied to Savi.  DKP's wrongful conduct also harmed Savi's reputation, goodwill, and standing among customers and potential customers.

17.     Savi asserts that DKP is obligated to comply with its continuing obligations under the MSA, including all of its warranty obligations.  DKP denies that assertion.

**C.     DKP Fails to Return Savi's Equipment or Permit Savi to Exercise its Audit Rights.**

18.     As a consequence of DKP's conduct, Savi terminated its business with DKP.

19.     Savi sought to enforce its rights to:  (a) audit and inspect the Equipment; and (b) take back the Equipment.  Despite its requests, DKP failed and refused to permit Savi to exercise such rights, and refused to release the Equipment to Savi.

20.     On or about October 4, 2019 (following months during which DKP rebuffed Savi's requests to obtain its Equipment), the parties agreed, among other things, that:  (a) Savi would transfer $200,000 to DKP; and (b) upon receipt of the $200,000 payment, DKP would immediately release the Equipment to Savi.

21.     On or about October 7, 2019, Savi transferred $200,000 to DKP, which DKP accepted.  DKP, however, refused to release the Equipment to Savi.

22.     Savi asserts that DKP is legally obligated to return the Equipment to Savi and comply with its contractual obligations.  DKP denies that assertion.

**D.    DKP Falsely Claims Savi is Required to Purchase Over $3.1
Million in Component Parts from DKP.**

23.    The MSA includes certain provisions regarding the disposition of unique, unused,

obsolete, and other component parts used to assemble Savi's Products ("Components"),

including when, and in what circumstances, each party would be responsible for paying for the

Components.

24.    DKP asserts (incorrectly) that Savi is obligated to purchase from DKP more than

$3.1 million in Components.  Savi denies that assertion.

**COUNT I**
**(Breach of Contract)**

25.    Paragraphs 1-24 of this Complaint are incorporated herein as if set forth in their

entirety.

26.    Savi and DKP entered into a valid and enforceable contract.

27.    DKP had a contractual duty to, among other things:  (a) deliver Products on time;

(b) deliver conforming Products that were assembled in accordance with industry standards by

competent and qualified personnel; (c) take appropriate action to minimize the possibility future

deliveries would include defective Products; (d) take appropriate action to prevent the

reoccurrence of defects; (e) take reasonable efforts to correct the non-conformance; (f) conduct

an adequate failure analysis (and report it to Savi); (g) repair or replace defective Products within

fourteen days of notice of non-conformance; (h) credit Savi for the amount paid for defective

Products and the related costs; (i) permit Savi to exercise its audit rights; (j) release the

Equipment to Savi; and (k) comply with its obligations upon an Epidemic Failure Event.

28.    DKP materially breached and failed to cure its contractual duties by, among other

things:  (a) delivering Products late; (b) delivering non-conforming Products not assembled in

accordance with industry standards by competent and qualified personnel; (c) failing to take appropriate action to minimize the possibility future deliveries would include defective Products; (d) failing to take appropriate action to prevent the reoccurrence of defects; (e) failing to take reasonable efforts to correct the non-conformance; (f) not conducting an adequate failure analysis (and not reporting it to Savi); (g) not repairing or replacing defective Products within fourteen days of notice of non-conformance; (h) not crediting Savi for the amount paid for defective Products and the related costs; (i) refusing to permit Savi to exercise its audit rights; (j) failing to release the Equipment to Savi; and (k) failing to comply with its obligations upon an Epidemic Failure Event.

29.     Savi performed all of its contractual obligations, or was otherwise excused for its non-performance.

30.     As a direct consequence of DKP's wrongful conduct, Savi has been damaged in an amount to be proven at trial.

## COUNT II
### (Conversion)

31.     Paragraphs 1-30 of this Complaint are incorporated herein as if set forth in their entirety.

32.     Savi is entitled to ownership of and the right to possess the Equipment.

33.     DKP wrongfully exercised dominion and control over Savi's property and ownership rights in the Equipment by, among other things, refusing to release the Equipment to Savi.

34.     DKP's actions have deprived Savi of possession and use of the Equipment, thereby damaging Savi in an amount to be proven at trial.

## COUNT III
**(Unjust Enrichment)**

35.     Paragraphs 1-34 of this Complaint are incorporated herein as if set forth in their entirety.

36.     Savi conferred a benefit on DKP by, among other things:  (a) providing it with the Equipment; and (b) transferring $200,000 to DKP.

37.     DKP knew Savi conferred the foregoing benefits on DKP and sat by while Savi worked to confer them.

38.     DKP reasonably should have expected to pay Savi compensation for conferring the foregoing benefits on DKP.

39.     DKP accepted and retained the foregoing benefits without paying the value of them, and thereby damaged Savi in an amount to be proven at trial.

## COUNT IV
**(Declaratory Judgment)**

40.     Paragraphs 1-39 of this Complaint are incorporated herein as if set forth in their entirety.

41.     A justiciable and actual controversy exists between the parties, which are clearly adverse to each other, because a declaratory judgment will terminate the controversy surrounding whether:  (a) DKP is obligated to comply with its continuing obligations under the MSA, including all of its warranty obligations; (b) DKP is obligated to release the Equipment to Savi; and (c) Savi is obligated to purchase from DKP more than $3.1 million in Components, and eventual litigation on these issues is unavoidable.

42.     The relief sought in this Count will clarify and settle the legal relations at issue in this case and will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to this action.

43.     The justiciable and actual controversy between the parties is ripe for resolution by this Court.

44.     This declaratory judgment action, brought under the Declaratory Judgments Act, 28 U.S.C. §§ 2201 *et seq*., is appropriate and will serve to terminate the controversy between the parties concerning defendants' actions relating to their contractual obligations.

45.     Therefore, to resolve this controversy, Savi respectfully requests that the Court enter a declaratory judgment that:  (a) DKP is obligated to comply with its continuing obligations under the MSA, including all of its warranty obligations; (b) DKP must immediately release the Equipment to Savi; and (c) Savi is not obligated to purchase from DKP the more than $3.1 million in Components that DKP claims Savi is obligated to purchase.

### PRAYER FOR RELIEF

WHEREFORE, Savi respectfully requests that the Court enter judgment in its favor and against DKP by:

(1)     Awarding Savi money damages in an amount to be determined at trial, but not less than $5,000,000;

(2)     Entering an injunction and requiring specific performance requiring DKP to:  (a) permit Savi to audit and inspect the Equipment; and (b) release the Equipment to Savi;

(3)     Entering a declaratory judgment that:  (a) DKP is obligated to comply with its continuing obligations under the MSA, including all of its warranty obligations;

(b) DKP is obligated to release the Equipment to Savi; and (c) Savi is not

obligated to purchase from DKP the more than $3.1 million in Components that

DKP claims Savi is obligated to purchase;

(4)      Awarding Savi pre-judgment and post-judgment interest;

(5)      Awarding Savi all costs associated with this action; and

(6)      Awarding Savi any other relief that the Court considers just and appropriate.

## JURY DEMAND

Savi demands a trial by jury of all issues triable of right by a jury.

Dated:  November 21, 2019

                                                    SAVI TECHNOLOGY, INC.
                                                    By Counsel

/s/ Michael J. Klisch
Michael J. Klisch, Esq. (VSB No. 32074)
Joshua M. Siegel, Esq. (VSB No. 73416)
COOLEY LLP
1299 Pennsylvania Ave, NW, Suite 700
Washington, DC  20004
Telephone:  (202) 842-7800
Facsimile:  (202) 842- 7899
mklisch@cooley.com
jsiegel@cooley.com

*Attorneys for Plaintiff Savi Technology, Inc.*